**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors and Debtors In Possession. | |
| TSA STORES, INC.; TSA PONCE, INC., and TSA CARIBE, INC., | |
| Plaintiffs | Adversary Proceeding |
| vs. | No. 16-_____ (MFW) |
| PINNACLE SPORTS EQUIPMENT INC., | |
| Defendant. | |

**COMPLAINT**

Sports Authority Holdings, Inc., Slap Shot Holdings, Corp., The Sports Authority, Inc., TSA Stores, Inc., TSA Gift Card, Inc., TSA Ponce, Inc. and TSA Caribe, Inc. are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors").

TSA Stores, Inc., TSA Ponce, Inc. and TSA Caribe, Inc. (collectively, the "Plaintiffs"), by and through their undersigned attorneys, hereby file this Complaint pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and state as follows:

**JURISDICTION AND VENUE**

1.      This is an adversary proceeding brought pursuant to Bankruptcy Rule 7001.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

2.      This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* dated as of February 29, 2012 from the United States District Court for the District of Delaware.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) such that the Court may enter a final order consistent with Article III of the United States Constitution.  Pursuant to Rule 7012-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiffs and Debtors consent to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

4.      Debtor Sports Authority Holdings, Inc., a debtor and debtor in possession in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), is a Delaware corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  Sports Authority Holdings, Inc. directly or indirectly owns all or substantially all of the equity in each of the other Debtors.

5.      Debtor Slap Shot Holdings Corp., a debtor and debtor in possession in the Chapter 11 Cases, is a Delaware corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  It is approximately 99.97% owned by Sports Authority Holdings, Inc. and 0.03% owned by a group of former employees.  Slap Shot Holdings Corp. is an intermediate holding company.

6.      Debtor The Sports Authority, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Delaware corporation having its principal place of business at 1050 West

2

Hampden Avenue, Englewood, Colorado 80110.  The Sports Authority, Inc. is a wholly owned subsidiary of Slap Shot Holdings Corp. and is an intermediate holding company.

7.      Plaintiff TSA Stores, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Delaware corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  It is wholly owned by The Sports Authority, Inc. and is the primary operating entity.  TSA Corporate Services, Inc. previously was a subsidiary of TSA Stores, Inc., but it was merged into the parent in 2009.  TSA Stores, Inc. is engaged in the business of selling retail sporting goods and apparel to the general public.

8.      Debtor TSA Gift Card, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Virginia corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  It is wholly owned by TSA Stores, Inc.  It is engaged in the business of issuing gift cards sold at stores operated by TSA Stores, Inc.

9.      Plaintiff TSA Ponce, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Delaware corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  It is wholly owned by The Sports Authority, Inc.  It is a parent corporation of TSA Caribe, Inc.

10.     Plaintiff TSA Caribe, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Puerto Rico corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  It is wholly owned by TSA Ponce, Inc.  It is engaged in the business of selling retail sporting goods and apparel to the general public.

11.     Defendant Pinnacle Sports Equipment Inc. (hereinafter the "Vendor" or "Defendant") is generally engaged in the business of distributing certain sporting goods and/or apparel to businesses for resale to the general public.  On information and belief, it has a place of

3

business at 3555 Victory Boulevard, Staten Island, New York 10314.  Vendor shipped and

delivered sporting goods and/or apparel to be sold by Plaintiff TSA Stores, Inc. pursuant to a

written agreement.

### PERTINENT FACTUAL AND LEGAL ALLEGATIONS

12.     Debtors market and sell sporting goods and apparel to the general public,

including without limitation active wear and outerwear for men, women and children; seasonal

accessories; recreational gear for a variety of outdoor activities such as camping, water sports,

fishing, and hunting; gear for team sports including baseball, soccer, football, and basketball;

gear for indoor exercise and fitness activities; golf gear and apparel; and select footwear, socks,

insoles, and accessories.

A.     **The UCC Converts Retention Of Title In The Vendor Agreement To The Reservation Of A Security Interest.**

13.     Pursuant to a written agreement (the "Agreement") between the Vendor and

Plaintiff and Debtor TSA Stores, Inc. ("TSA"), Vendor shipped and delivered goods to TSA for

resale.  A true and correct copy of the Agreement is attached hereto as Exhibit A and

incorporated herein by reference.

14.     In this respect, the Agreement states that Defendant is the "Vendor" and that TSA

Stores, Inc. is the "Buyer."  (Agreement at Signature Blocks.)  The Agreement also states in

relevant part:  "TSA and Vendor agree that the arrangement contemplated by this agreement

shall be a consignment as defined in Section 9-102 of the Colorado and Delaware Uniform

Commercial Codes.  Vendor shall retain title to all goods subject to this agreement until the date

of sale at which time title shall pass from Vendor to the purchaser of such goods.  Vendor shall

be entitled to file UCC-1 Financing Statements to reflect this consignment."[2]  (Agreement at 2.)
By its terms, the Agreement states that it is effective from on or about the date it was executed
and is to remain in effect until a new agreement is signed between the parties.  (*Id*.)

15.    Although the Agreement provides that the Vendor shall retain title to all goods,
this provision in the Agreement is ineffective by operation of law under the Uniform
Commercial Code ("UCC") with respect to goods that have been shipped and/or delivered to
TSA.  UCC § 2-401(1) specifically provides: ***"Any retention or reservation by the seller of the
title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of
a security interest."***  (Del. Code Ann. tit. 6, § 2-401 (emphasis added).)  Accordingly, UCC § 2-
401 operates to ***convert*** any attempt by a seller to retain or reserve title in goods shipped or
delivered into a reservation of a security interest as a matter of law.  Indeed, UCC § 2-401(1)
prevents parties from contracting to control the passage of title in contravention of this provision
by further providing:  "***Subject to these provisions and to the provisions of the Article on
Secured Transactions (Article 9)***, title to goods passes from the seller to the buyer in any
manner and on any conditions explicitly agreed on by the parties."  (*Id*. (emphasis added).)

16.    This also is expressly reflected in the definition of "security interest" in the UCC.
The definition states in relevant part:  "***The retention or reservation of title by a seller of goods***
notwithstanding shipment or delivery to the buyer under § 2-401 ***is limited in effect to a
reservation of a 'security interest.'***"  (Del. Code Ann. tit. 6, § 1-201(35) (emphases added).)
Hence, while the Vendor professed to retain title to goods after they were shipped or delivered to

---

[2]  Delaware law is the same as Colorado with respect to the referenced provision.  (Del.
Code Ann. tit. 6, § 9-102(20); Colo. Rev. Stat. § 4-9-102(20).)  The citations herein refer to the
law of Delaware since that is where the relevant Debtors are deemed to be "located" under the
law of both jurisdictions, as opposed to their principal place of business in Colorado.  (Del. Code
Ann. tit. 6, § 9-307(e) ("A registered organization that is organized under the law of a State is
located in that State."); *see also* Colo. Rev. Stat. § 4-9-307(e) (same).)

TSA, any rights Vendor may have are limited exclusively to reservation of a security interest in such goods as a matter of law.

      **B.**    **The Vendor Has An Avoidable Security Interest Because It Filed An Untimely Financing Statement And Purported To Perfect Its Reservation Of A Security Interest Within The 90-Day Preference Period.**

      17.    The Agreement provided expressly that "Vendor shall be entitled to file UCC-1 Financing Statements" to perfect its security interest in goods.  (Agreement at 2.)  The fundamental rule on the perfection of a security interest under the UCC, Title 6 of the Delaware Code, states that "*a financing statement must be filed to perfect all security interests* and agricultural liens."  (Del. Code Ann. tit. 6, § 9-310(a) (emphasis added).)  Thus, the Vendor was required to file a financing statement, a UCC-1, in order to perfect its security interest in goods.  The UCC, Title 6 of the Delaware Code, provides that the "location" of the debtor is the proper jurisdiction for perfection to occur here, and provides that "[a] registered organization that is organized under the law of a State is located in that State."  (Del. Code Ann. tit. 6, §§ 9-301(1) and 9-307(e).)

      18.    Here, TSA is incorporated in the State of Delaware.  Accordingly, a party seeking to perfect a security interest must file a UCC-1 financing statement to perfect its security interest in TSA with the Delaware Secretary of State.  Accordingly, a UCC-1 financing statement that was filed in any other jurisdiction is ineffective.  A search of financing statements filed with the Office of the Secretary of State in Delaware has revealed that the Vendor filed a UCC-1 financing statement on March 1, 2016 seeking to perfect a security interest in certain collateral.  A true and correct copy of such UCC-1 Financing Statement is attached hereto as <u>Exhibit B</u>[3] and incorporated herein by reference.  On March 2, 2016 (the "Petition Date"), each of the Debtors

---

[3] Vendor's UCC-1 financing statement explicitly designates the relationship between the debtor and secured party as a "consignee/consignor" relationship.

filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Accordingly, Vendor filed its financing statement within 90 days of the Petition Date.

19.     Under section 547(b) of the Bankruptcy Code, a transfer of an interest of the debtor in property is avoidable as a preferential transfer if it (1) is to or for the benefit of a creditor, (2) is for or on account of an antecedent debt owed by the debtor before such transfer was made, (3) is made while the debtor was insolvent, (4) is *made on or within 90 days* before the date of the filing of the petition, and (5) enables such creditor to receive more than such creditor would receive in a chapter 7 liquidation of the debtor.  Pursuant to the "perfection rule" set forth in section 547(e)(2), a transfer is *made* "at the time *such transfer takes effect* between the transferor and the transferee, if such transfer is perfected at, or *within 30 days after*, such time," or "at the time such transfer is *perfected*, if such transfer is perfected *after such 30 days*." 11 U.S.C. 547(e)(2) (emphases added).  The perfection of a security interest arising from a transfer that occurred more than 30 days preceding such perfection is deemed to have occurred – and thus such transfer is deemed to be *made* – on the date of perfection.

20.     Here, each of the elements of section 547(b) are satisfied to establish that the Vendor's untimely filing of such financing statement constitutes a *preferential* transfer.  First, the filing of the UCC-1 financing statement and the perfection of the Vendor's security interest in the subject goods constitutes a transfer of an interest to the Vendor.  Second, upon information and belief, the Vendor sought to perfect its security interest in goods that were shipped and delivered to TSA at least 30 days prior to perfection, such transfer was made on account of an antecedent debt.  Third, pursuant to section 547(f) of the Bankruptcy Code, TSA is deemed to be presumptively insolvent during the 90-day period preceding the Petition Date.  Fourth, such transfer is deemed to be made within the 90-day period preceding the Petition Date because

7

perfection occurred more than 30 days following the shipment and delivery of the subject goods. Finally, because perfection elevates the priority of the Vendor's otherwise unperfected security interest, it enables the Vendor to receive more than it would receive in a hypothetical chapter 7 liquidation of TSA.   Accordingly, the Vendor's untimely filing of the UCC-1 financing statement is an avoidable preferential transfer.

      C.    <u>Perfected Security Interests Prevail Over Unperfected Security Interests.</u>

21.    The rules of priority under the UCC are clearly stated in Title 6 of the Delaware Code.  Perfected security interests have priority over unperfected interests, and perfected interests have priority based upon the time of filing and perfection.  (*See* Del. Code Ann. tit. 6, § 9-322.)  Moreover, a judicial lien creditor (such as a debtor in possession) has rights superior to a holder of an unperfected security interest.  (*See* Del. Code Ann. tit. 6, § 9-317(a).)  To the extent that there are secured parties with perfected security interests, they each have priority to goods supplied and/or delivered by Vendor under the Agreement, as well as all proceeds from sales of such goods.  This includes Debtors or lenders that have perfected interests in all of the Debtors' inventory – such as Bank of America, N.A. and Wells Fargo Bank, National Association (collectively, the "Secured Lenders").  In this regard, goods shipped and/or delivered to Debtors by Vendor prepetition are subject to claims by the buyer's creditors while in the buyer's possession as "sale or return" goods delivered for resale.  (*See* Del. Code Ann. tit. 6, § 2-326(1)-(2).)

22.    Vendor did not perfect any prepetition security interest it may have had under state law in goods shipped or delivered to Debtors prepetition, and does not qualify for any other exception.  The failure to perfect any security interest that Vendor may have had by operation of law in goods shipped and/or delivered to Debtors is fatal under the Bankruptcy Code, given that Debtors possess the right to avoid any liens or interest that are junior to a hypothetical lien

creditor as of the Petition Date.  (11 U.S.C. §§ 544(a) and 1107(a).)  At the time of the subject

bankruptcy, all legal and equitable interests of the Debtors in property became property of the

bankruptcy estate pursuant to section 541 of the Bankruptcy Code.  (11 U.S.C. § 541.)  In this

respect, no knowledge of a prepetition debtor regarding the consignments is imputed to the

Debtors.  (*See* 11 U.S.C. § 544.)  As debtors and debtors in possession under the Bankruptcy

Code, Debtors are authorized to exercise a trustee's avoidance powers pursuant to section 544 of

the Bankruptcy Code.  Therefore, Debtors may exercise the trustee's avoidance powers, declare

Vendor to be without a perfected secured interest in the subject Goods and Property (each as

defined below), and continue to sell the Goods in the regular course of Debtors' business.

> **D.**    **Even if Vendor's Interest is Deemed Perfected, Prior Perfected Security Interests Of The Debtors' Secured Lenders Prevail Over Subsequently Perfected Security Interests.**

23.    The rules of priority under the UCC are clearly stated in Title 6 of the Delaware

Code.   Perfected security interests have priority over unperfected interests, and perfected

interests have priority based upon the time of filing and perfection.  (*See* Del. Code Ann. tit. 6,

§§ 9-317 and 9-322.)   Specifically, UCC § 9-317(a)(1) provides that a security interest is

subordinate to the rights of a security interest that is entitled to priority under UCC § 9-322.

(Del. Code Ann. tit. 6, § 9-317(a)(1).)  UCC § 9-322(a) further explains that conflicting security

interests are ranked according to priority in time of filing or perfection, and that a perfected

security interest has priority over a conflicting unperfected security interest in the same collateral

and proceeds thereof.  (Del. Code Ann. tit. 6, § 9-322(a).)

24.    The Secured Lenders perfected their security interests in the Debtors' inventory

before the Vendor attempted to "perfect" its security interest in goods shipped and/or delivered

to the Debtors by Vendor pursuant to the Agreement, the prior perfected security interests of

such parties will have priority over the Vendor's interests in the same collateral.  Because the

Agreement provides that the Debtors have a right to return unsold goods to the Vendor, UCC § 2-326 provides that the existence of this right makes the transaction between the Vendor and the Debtors constitute a "sale or return" as a matter of law because goods are deemed to be delivered primarily for resale to the general public.  (*See* Del. Code Ann. tit. 6, § 2-326(1)-(2).)  The fact that the transaction here constitutes a "sale or return" under UCC § 2-326 renders such goods expressly subject to "the claims of the buyer's creditors" while such goods are in the Debtors' possession.  The ability of the Debtors' secured lenders to assert a security interest in such goods applies with equal force in the consignment context because UCC § 9-319(a) provides that "for purposes of ***determining the rights of creditors of***, and purchasers for value of goods from, a consignee, ***while the goods are in the possession of the consignee***, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer." (Del. Code Ann. tit. 6, § 9-319(a) (emphases added).)  Accordingly, to the extent that the Debtors' lenders – such as Bank of America, N.A., Wells Fargo Bank, National Association, and Wilmington Savings Fund Society, FSB – have prior perfected security interests in all of the Debtors' inventory, such security interests are senior to those of the Vendor in goods shipped and delivered to the Debtors.  Based upon a search of financing statements filed with the Office of the Secretary of State in Delaware, on information and belief, Debtors' secured lenders hold valid and perfected security interests in the Debtors' inventory that were filed before the Vendor attempted to perfect its security interest in the subject goods.

25.    To the extent that the Vendor could have obtained a purchase-money security interest specifically in goods shipped and delivered to the Debtors, the Vendor failed to do so. UCC § 9-324 provides that a perfected purchase-money security interest in inventory has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash

proceeds of the inventory to the extent the identifiable cash proceeds are received on or before the delivery of the inventory to a buyer, provided that the following conditions are satisfied: (1) the purchase-money security interest is perfected when the debtor receives possession of the inventory; (2) the purchase-money secured party sends an authenticated notification to the holder of the conflicting security interest; (3) the holder of the conflicting security interest receives the notification within five years before the debtor receives possession of the inventory; and (4) the notification states that the person sending the notification has or expects to acquire a purchase-money security interest in inventory of the debtor and describes the inventory.  (Del. Code Ann. tit. 6, § 9-324(b).)

26.     Here, on information and belief, the Vendor did not provide the requisite notice to the Debtors' secured lenders in order to obtain a purchase-money security interest in goods it shipped and delivered to TSA.

### E.     Debtors Are Permitted To Continue To Sell The Goods In The Regular Course Of Business.

27.     Section 363(c) of the Bankruptcy Code authorizes the trustee (or in this case the Debtors) to sell property of the estate in the ordinary course of business without notice or a hearing.  Pursuant to section 363(f) of the Bankruptcy Code, Debtors may sell property free and clear of any interest in such property of an entity other than the estate if, *inter alia,* any one of the following conditions is satisfied:  (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; _**or**_ (2) such interest is in bona fide dispute; _**or**_ (3) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  Although only one of these criteria is necessary to permit Debtors to sell goods supplied and/or delivered by Vendor to Debtors prepetition, here there exist three separate and independent bases for such a sale.

28.     First, applicable non-bankruptcy law permits such a sale.  Pursuant to UCC § 9-319(a), while the subject goods are in the possession of the Debtors in their capacity as consignee, the Debtors are "deemed to have rights and title to the goods *identical to those the consignor had or had power to transfer*."   (Del. Code Ann. tit. 6, § 9-319(a) (entitled "Consignee has consignor's rights") (emphasis added).)  The exception in Del. Code Ann. tit. 6, § 9-319(b) does not apply because there is no perfected security interest held by Vendor as set forth above.  Thus, Debtors are cloaked with the requisite rights and title to continue to sell goods shipped and delivered to them by Vendor in the regular course of business – without the need for consent by the Vendor holding an unperfected and thus avoidable security interest in goods.  Thus, section 363(f)(1) of the Bankruptcy Code permits the Debtors to continue to sell goods free and clear of any interests therein.

29.     Second, at a minimum, the facts and applicable law demonstrate that a bona fide dispute exists concerning the interests in the goods as reflected in this Complaint, pursuant to the Court's ruling in *In re DVI, Inc.*, 306 B.R. 496 (Bankr. D. Del. 2004) and its progeny.  Thus, section 363(f)(4) of the Bankruptcy Code permits Debtors to continue to sell the goods free and clear of any interests therein.

30.     Finally, because of the unperfected nature of Vendor's security interest in the subject goods shipped and/or delivered to Debtors prepetition, Vendor could be compelled to accept a monetary satisfaction on account of such interest.  Thus, section 363(f)(5) of the Bankruptcy Code permits Debtors to continue to sell goods free and clear of any interests therein.

31.     Refusing to allow the Debtors to sell the subject goods would have a serious detrimental effect on Debtors.  It could, in essence, force Debtors to shutter their more than 425

stores, terminate the employment of more than 8,000 individuals, and force Debtors out of business, thereby precluding any and all potential options for reorganization or external investment.  It also would have a devastating impact on all creditors.

32.     Approximately $380,937 of goods has been shipped and delivered by Vendor to TSA Stores, Inc. prepetition, which presently are the subject of the Agreement and which Plaintiffs intend to continue to sell in the regular course of their business as they have in the past.

## FIRST COUNT

### (Declaratory Judgment Against Vendor)

33.     Plaintiffs repeat and re-allege paragraphs 1 through 32 above.

34.     A real and existing controversy exists between Plaintiffs and Vendor concerning:

(a)     Whether the Vendor's assertion of title is limited in effect to a reservation of a security interest by operation of law, including pursuant to Del. Code Ann. tit. 6, § 2-401;

(b)     Whether the Vendor has an unperfected and therefore avoidable security interest in the Property;

(c)     Whether any security interest held by the Vendor in the Goods or the Property is entitled to priority as against any other competing security interests;

(d)     Whether Vendor instead holds no more than a general unsecured claim against Debtors in the Goods and Property;

(e)     Whether the Goods are property of the Debtors' estates under section 541(a) and pursuant to section 544(a) of the Bankruptcy Code;

(f)     Whether Debtors hold an interest senior in right and priority to that of Vendor in the Goods and Property by virtue of sections 541, 544 and 1107(a) of the

Bankruptcy Code, including but not limited to the right to exercise the trustee's avoidance powers against Vendor;

(g)        Whether Debtors can avoid Vendor's security interest in the Goods, including pursuant to sections 541, 544(a) and 1107(a) of the Bankruptcy Code;

(h)        Whether other existing secured creditors such as the lenders of Debtors hold valid, perfected, unavoidable, and senior interests in the Goods and Property;

(i)        Whether Vendor has a purchase-money security interest and provided the requisite notice thereof to obtain a prior perfected purchase-money security interest in any goods shipped and delivered by Vendor to Debtors;

(j)        Whether Vendor is entitled to return of the Goods, including pursuant to relief from the automatic stay otherwise imposed by section 362(d) of the Bankruptcy Code;

(k)        Whether Debtors are entitled to continue to sell the Goods in the regular course of their business; and

(l)        Whether Vendor is entitled to any proceeds generated from the sale of the Goods.

35.        This existing controversy is substantial and justifiable because it affects the parties in a concrete manner so as to provide the factual predicate for reasoned adjudication.  The controversy is also of sufficient immediacy to warrant the issuance of a declaratory judgment.  A declaratory judgment will conclusively clarify the legal rights and obligations of the parties, and will be of practical assistance to them.  The judgment sought will terminate the controversy and remove any uncertainty concerning their respective rights and obligations.

36.        Accordingly, Debtors seek an order declaring that:

(a)     Vendor's assertion of title is limited in effect to a reservation of a security interest by operation of law, including pursuant to Del. Code Ann. tit. 6, § 2-401;

(b)     Vendor's UCC-1 financing statement is ineffective as a matter of law for the purpose of perfecting the Vendor's security interest in the Property;

(c)     Vendor does not have a perfected and otherwise unavoidable security interest in the Goods or the Property;

(d)     Vendor does not have a perfected and senior security interest in the Goods or the Property;

(e)     Vendor instead holds no more than a general unsecured claim against Debtors in the Goods and Property;

(f)     The Goods are property of Debtors' estates pursuant to section 544(a) of the Bankruptcy Code;

(g)     Debtors hold an interest senior in right and priority to that of the Vendor in the Goods and Property by virtue of sections 541 and 544 of the Bankruptcy Code, including the right to exercise the trustee's avoidance powers against Vendor;

(h)     Vendor's unperfected security interest in the Goods is avoidable, including pursuant to section 544(a) of the Bankruptcy Code and UCC § 9-317 (Del. Code Ann. tit. 6, § 9-317(a)), and therefore is avoided by the Debtors;

(i)     Other existing secured creditors such as the lenders of Debtors hold valid, perfected, unavoidable, and senior interests in the Goods and Property;

(j)     Whether Vendor has a purchase-money security interest and provided the requisite notice thereof to obtain a prior perfected purchase-money security interest in any goods shipped and delivered by Vendor to Debtors;

(k)     The Goods are property of Debtors' estates pursuant to section 541 of the Bankruptcy Code, and Vendor is not entitled to return of the Goods, including pursuant to relief from the automatic stay imposed by section 362(d) of the Bankruptcy Code in this respect;

(l)     Debtors are entitled to continue to sell the Goods in the regular course of their business; and

(m)    Vendor is not entitled to proceeds generated from the sale of the Goods except as a general unsecured creditor.

## SECOND COUNT

### (Avoidance of Preferential Transfer – 11 U.S.C. § 547)

37.     Plaintiffs repeat and re-allege paragraphs 1 through 36 above.

38.     On or within 90 days prior to the Petition Date, Vendor filed a UCC-1 financing statement and purported to perfect a security interest in property of the Debtors (the "Transfer").

39.     The filing of the UCC-1 financing statement and purported perfection of Vendor's security interest in property of the Debtors would constitute a "transfer" of an interest of the Debtors in property pursuant to section 101(54) of the Bankruptcy Code.

40.     Vendor was a "creditor" of Debtor and Plaintiff TSA Stores, Inc. at the time the Transfer was made within meaning of section 101(10)(A) of the Bankruptcy Code.    On information and belief, the Transfer was made on account of goods shipped and delivered to the Debtors more than 30 days after the shipment and delivery of such goods.

41.     The Transfer was made to or for the benefit of Vendor.

42.     The Transfer was made for or on account of an antecedent debt owed by the Debtors to Vendor before such transfer was made.

16

43.     The Transfer was made while the Debtors were presumptively insolvent pursuant to section 547(f) of the Bankruptcy Code.

44.     Unless the Transfer is avoided, it enables Vendor to receive more than it would have received as a creditor if: (a) such transfer had not been made and (b) Vendor had received payment on the debt that it was owed to the extent provided in a case under chapter 7 of the Bankruptcy Code.

45.     Accordingly, Debtors are entitled to avoid the Transfer pursuant to section 547(b) of the Bankruptcy Code.

## THIRD COUNT

### (Recovery of Avoidable Transfer -- 11 U.S.C. § 550)

46.     Plaintiffs repeat and re-allege paragraphs 1 through 45 above.

47.     The Transfer was made by the Debtors directly to or for the benefit of Vendor.

48.     Debtors are entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b).

49.     Accordingly, Debtors are entitled to recover the Transfer or the value thereof from Vendor as an avoidable preference pursuant to section 550 of the Bankruptcy Code.

## FOURTH COUNT

### [(Disallowance of Defendant's Claim -- 11 U.S.C. § 502(d))]

50.     Plaintiffs repeat and re-allege paragraphs 1 through 49 above.

51.     Vendor is a transferee of transfers avoidable under section 547 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

52.     Vendor has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Vendor is liable under 11 U.S.C. § 550.

53.     Vendor (a) has filed one or more proofs of claim against the Debtors or (b) was listed by Debtors in their Schedules of Assets and Liabilities as holding one or more claims against Plaintiff ("Defendant's Claims").

54.     Accordingly, the entirety of each and every one of Vendor's claims must be disallowed pursuant to section 502(d) of the Bankruptcy Code unless and until Defendant returns to Plaintiff each of the Transfers set forth in this Complaint .

## FIFTH COUNT

### (Injunctive Relief Against Vendor)

55.     Plaintiffs repeat and re-allege paragraphs 1 through 54 above.

56.     Unless Vendor is preliminarily and permanently enjoined from (a) inhibiting or preventing Debtors from selling the Goods in the regular course of their business, and/or (b) taking action in furtherance of a position that it has any unavoidable, perfected secured rights in the subject Goods and Property, Vendor will cause imminent and irreparable harm to Debtors and their 8,000 plus employees, as well as Debtors' creditors.

57.     There is no other adequate remedy at law to address and rectify the current situation absent such relief.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter an order as follows:

1.     As to the **First Count for Declaratory Judgment** against Vendor, declaring that:

(a)     Vendor's assertion of title is limited in effect to a reservation of a security interest by operation of law, including pursuant to Del. Code Ann. tit. 6, § 2-401;

(b)     Vendor's UCC-1 financing statement is ineffective as a matter of law for the purpose of perfecting the Vendor's security interest in the Property;

(c)     Vendor does not have a perfected and otherwise unavoidable security interest in the Goods or the Property;

(d)     Vendor does not have a perfected and senior security interest in the Goods or the Property;

(e)     Vendor instead holds no more than a general unsecured claim against the Debtors in the Goods and Property;

(f)     The Goods are property of Debtors' estates pursuant to section 541 of the Bankruptcy Code;

(g)     Debtors hold an interest senior in right and priority to that of the Vendor in the Goods and Property by virtue of sections 541 and 544 of the Bankruptcy Code, including the right to exercise the trustee's avoidance powers against Vendor;

(h)     Vendor's unperfected security interest in the Goods is avoidable, including pursuant to section 544(a) of the Bankruptcy Code and UCC § 9-317 (Del. Code Ann. tit. 6, § 9-317(a)), and is therefore avoided by Debtors;

(i)     Other existing secured creditors such as the lenders of Debtors hold valid, perfected, unavoidable, and senior interests in the Goods and Property;

(j)     Whether Vendor has a purchase-money security interest and provided the requisite notice thereof to obtain a prior perfected purchase-money security interest in any goods shipped and delivered by Vendor to Debtors;

(k)     The Goods are property of Debtors' estates pursuant to section 541 of the Bankruptcy Code, and Vendor is not entitled to return of the Goods, including pursuant to relief from the automatic stay otherwise imposed by section 362(d) of the Bankruptcy Code in this respect;

(l)     Debtors are entitled to continue to sell the Goods in the regular course of their business; and

(m)     Vendor is not entitled any proceeds generated from the sale of the Goods except as a general unsecured creditor.

2.     As to the **Second Count for Avoidance of Preferential Transfer**, ordering that the Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code, and is therefore avoided by Debtors;

3.     As to the **Third Count for Recovery of Transfer**, ordering that Debtors are entitled to recover the Transfer or the value thereof from Vendor as an avoidable preference pursuant to section 550 of the Bankruptcy Code;

4.     As to the **Fourth Count for Disallowance of Defendants' claims,** ordering that Defendant's Claims are disallowed pursuant to section 502(d) of the Bankruptcy Code;

5.     As to the **Fifth Count for Injunctive Relief against Vendor**, ordering that:

(a)     Vendor is prohibited from inhibiting or preventing Debtors from selling the Goods in the regular course of their business; and

(b)     Vendor is prohibited from taking action in furtherance of a position that it has any unavoidable, perfected secured rights in the subject Goods and Property.

6.     All damages recoverable at law or in equity.

7.     Pre- and post-judgment interest as allowed by law.

8.     Awarding the Plaintiffs the costs and disbursements of this action, and the Plaintiffs' attorneys' and experts' fees.

9.     Granting such other and further relief as this Court may deem to be just and proper.

Dated: March 16, 2016     GIBSON, DUNN & CRUTCHER LLP
   Wilmington, Delaware    Robert A. Klyman
              David A. Battaglia
              Sabina Jacobs
              333 S. Grand Ave.
              Los Angeles, CA 90071
              Telephone:  (213) 229-7000
              Facsimile:  (213) 229-6000

              - and -

              YOUNG CONAWAY STARGATT &
              TAYLOR, LLP

              /s/ Michael S. Neiburg
              Michael R. Nestor (No. 3526)
              Michael S. Neiburg (No. 5275)
              Andrew L. Magaziner (No. 5426)
              Rodney Square
              1000 North King Street
              Wilmington, Delaware 19801
              Telephone:  (302) 571-6600
              Facsimile:  (302) 571-1253

              *Proposed Counsel to Debtors Sports Authority*
              *Holdings, Inc., Slap Shot Holdings, Corp., The*
              *Sports Authority, Inc., TSA Stores, Inc., TSA*
              *Gift Card, Inc., TSA Ponce, Inc. and TSA*
              *Caribe, Inc.*